UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TRISHA ARMOOGAM,

    Plaintiff,

v.                                        Case No. 8:19-cv-1665-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

## **ORDER**

Plaintiff seeks judicial review of the denial of her claim for Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was not based on substantial evidence and failed to employ proper legal standards, the Commissioner's decision is reversed and remanded.

**I.**

**A.     Procedural Background**

Plaintiff filed an application for SSI (Tr. 161, 166). The Commissioner denied Plaintiff's claim both initially and upon reconsideration (Tr. 71, 86). Plaintiff then requested an administrative hearing (Tr. 99). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff and a vocational expert ("VE") testified (Tr. 34-55). Thereafter, the ALJ issued an unfavorable decision finding Plaintiff not disabled and thus denying her claim for benefits (Tr. 10-21). Plaintiff requested review of the ALJ's decision (Tr. 158), which the Appeals Council denied (Tr. 1-3). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. § 1383(c)(3).

**B.     Factual Background and the ALJ's Decision**

Plaintiff, who was born in 1980, claimed disability beginning July 21, 2015 (Tr. 161, 166).[1] Plaintiff has a high school education and no past relevant work experience (Tr. 19, 40-41). Plaintiff alleged disability due to congenital heart defects, a heart block, a heart murmur, a single ventricle, severe scoliosis, hypothyroidism, liver damage, depression, eczema due to stress, and a history of immune/idiopathic thrombocytopenic purpura ("ITP") (Tr. 173). .

In rendering the administrative decision, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since January 14, 2016, the date of her application (Tr. 12). After conducting the administrative hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: congenital heart disease, disorder of the back, and depression. *Id.* Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform sedentary work[2] except:

> [She] can lift up to 10 pounds occasionally. [She] can stand or walk for approximately two hours per 8-hour workday and she can sit for approximately six hours per 8-hour workday with normal breaks. [She] can never climb ladders, ropes, or scaffolds and she can occasionally [perform] all other postural limitations including climbing ramps and stairs, balancing, stooping, crouching, kneeling or crawling. [She] must avoid concentrated exposure to extreme cold, extreme heat, excessive wetness, excessive humidity, and irritants such as fumes, odors, dust and gases. [She] must avoid

---

[1] Plaintiff previously was awarded SSI benefits in 2004 (Tr. 188). It appears that her benefits ended for income-related reasons when she got married (Tr. 357).

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 416.967(a).

2

>even moderate exposure to gases. [Her] work is limited to unskilled work, SVP 1 or 2 simple, routine and repetitive tasks.

(Tr. 14-15). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective allegations and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 16). Considering Plaintiff's age, education, and RFC, as well as the VE's testimony that Plaintiff could perform jobs existing in significant numbers in the national economy, the ALJ found Plaintiff not disabled (Tr. 19-21).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920.[3] If an individual is found disabled at any point in the sequential review, further

---

[3] With one exception, the cited references to the regulations pertain to those in effect at the time the decision was rendered. As the parties recognize, on January 18, 2018, the Commissioner revised the rules of 20 C.F.R § 416.927 regarding the evaluation of medical evidence for claims filed after March

3

inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The

---

27, 2017. *See* 82 Fed. Reg. 5844. Because the revised rules became effective after the claims were filed in this cause, the regulations and rulings that were in effect at the time thereof govern this case.

Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

### III.

Plaintiff raises one claim on appeal—whether the ALJ properly weighed the treating specialist evidence consistent with the regulations, SSA policy, and Eleventh Circuit precedent (Doc. 16 at 15). Plaintiff argues that the ALJ failed to state good cause for rejecting the opinion of Dr. Ketul Chauhan, her treating cardiologist, and the error was not harmless because the limitations Dr. Chauhan assessed exceeded those included in the ALJ's RFC determination and, per the VE, precluded the ability to work. *Id.* at 16-26. The Commissioner counters that the ALJ's evaluation of the opinion evidence should be affirmed. *Id.* at 26-27.

The Court finds that Plaintiff's claim has merit and requires remand. As explained below, the Court finds that the ALJ failed to properly evaluate Dr. Chauhan's opinion evidence, take into account and evaluate the record as a whole with respect to Plaintiff's heart impairment, and provide good cause to reject Dr. Chauhan's opinion on Plaintiff's functional capacity.

Dr. Chauhan treated Plaintiff in 2017 and 2018.[4] On July 25, 2017, Dr. Chauhan performed a complete transthoracic echocardiogram (Tr. 468). He reported that the

---

[4] By way of background, Plaintiff was born with congenital heart defects. She was diagnosed with "single ventricle anatomy with situs solitus of the atria, D-looped ventricles, D and L-malposed aorta (S,D,L); double outlet right ventricle; unbalanced LV [left ventricle] dominant complete AVSD [atrioventricular septal defect] with straddling and hypoplastic right AV [atrioventricular] valve; bilateral SVC's [superior vena cava] without bridging vein; and multi-level PS [pulmonary stenosis]" (Tr. 275). Plaintiff underwent at least five heart surgeries by the time she was twenty years old. *Id.* Prior to her current alleged onset date, Plaintiff also underwent at least two cardiac catheterizations. *Id.* As

echocardiogram showed the left ventricle was normal in size with normal systolic function with an ejection fraction of 60-65%; trace mitral regurgitation; the right ventricle was very small and "no VSD (Tetralogy of fallot),"[5] and a dilated LVOT (left ventricular outflow tract) (Tr. 468). In a follow-up visit on April 24, 2018, Dr. Chauhan noted Plaintiff's complaints of chest pain, shortness of breath, palpitations, and lightheadedness (Tr. 452).[6] On exam, he noted a regular heart rate and rhythm, normal S1 and S2, and no murmurs. *Id.* Dr. Chauhan assessed coronary artery disease, atrial fibrillation, a heart murmur, a pacemaker, an abnormal EKG, and atrial flutter. *Id.* Dr. Chauhan opined that Plaintiff had chronic fatigue and exertional dyspnea (shortness of breath), arrythmia related palpitations and dizziness, and limited functional capacity. *Id.* He opined further that Plaintiff has a "very complex cardiac [history] with Tetrology of fallot," and he noted that Plaintiff needed an adult congenital [heart defect] physician.[7] *Id.* An echocardiogram conducted the same day showed "the left ventricle [was] normal in size with normal systolic function with an ejection fraction of 55-60%; mild mitral regurgitation; single ventricle with basal half of septum defect; small RV [right ventricle]; large

---

noted above, it appears Plaintiff received SSI as a result of those impairments, but those benefits terminated after she got married and no longer met the income requirements for SSI.

[5] Tetralogy of Fallot is a rare condition caused by a combination of four heart defects that are present at birth (congenital). Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/tetralogy-of-fallot/symptoms-causes/syc-20353477 (last visited Sept. 9, 2020). The four defects include a ventricular septal defect (VSD), pulmonary valve stenosis, a misplaced aorta and a thickened right ventricular wall (right ventricular hypertrophy). *Id.* They usually result in an insufficient amount of oxygenated blood reaching the body. *Id.*

[6] Dr. Chauhan noted that Plaintiff was an "established patient here to follow up" (Tr. 452), however, Dr. Chauhan's earlier treatment notes are not included in the administrative record.

[7] In 2012, the American Board of Medical Specialties approved adult congenital heart disease ("ACHD") as a subspecialty of internal medicine cardiology, and it is recommended that individuals with ACHD be followed/treated by such specialists. 2018 AHA/ACC Guideline for the Management of Adults With Congenital Heart Disease, *A Report of the American College of Cardiology/American Heart Association Task Force on Clinical Practice Guidelines,* available at https://www.ahajournals.org/doi/pdf/10.1161/CIR.0000000000000603 (last visited on Sept. 10, 2020).

VSD [ventricular septal defect]" (Tr. 455). On review of the echocardiogram, Dr. Chauhan noted that Plaintiff appeared to have a single ventricle, there was a large basal septal missing, Plaintiff's ejection fraction was "ok," and Plaintiff had an "overall very complex anatomy . . . [that was] hard to assess" (Tr. 453).

On April 25, 2018, Dr. Chauhan completed a "Cardiac Medical Source Statement" (Tr. 476-79). He reported diagnoses of Tetralogy of Fallot, atrial fibrillation, and sick sinus syndrome with permanent pacemaker insertion (Tr. 476). He identified Plaintiff's symptoms as chest pain, arrhythmia, exertional dyspnea, exercise intolerance, rest dyspnea, chronic fatigue, dizziness, and palpitations. *Id.* He reported that Plaintiff experienced chest pain with exertion or stress at least once a day, which typically required her to rest for two to three hours after each episode. *Id.* Dr. Chauhan opined that Plaintiff was incapable of performing even low stress work due to her cardiac issues (Tr. 477). Dr. Chauhan further opined that Plaintiff: could sit for about four hours and stand/walk for less than two hours in an eight-hour workday; needed to take unscheduled breaks four to six times during the workday, during which she would need to lie down; could never lift/carry any weight in a competitive work situation; could rarely perform postural activities; should avoid concentrated exposure to all environmental factors; and would likely be off task more than twenty-five percent of the workday and miss more than four days of work per month due to her impairments or treatment (Tr. 477-79).

The ALJ gave "little weight" to Dr. Chauhan's assessment "because it [was] not fully supported by the evidence of record" (Tr. 18). The ALJ stated that according little weight to Dr. Chauhan's assessment was "also consistent with the fact that the [Plaintiff] remains able to take care of her personal care, her cats, cook, clean and drive with no significant problems." *Id.*

The Court finds that the ALJ failed to properly evaluate Dr. Chauhan's opinion evidence. The Court is unable to ascertain whether the ALJ applied the correct standard in

7

evaluating Dr. Chauhan's opinion.[8] It is unclear from the decision whether the ALJ recognized that Dr. Chauhan was a treating doctor, the import in this case of Dr. Chauhan's specialty in cardiology, and/or that Dr. Chauhan was the only treating doctor to provide an opinion on Plaintiff's functional capacity as a result of her complex congenital heart defect and related cardiac conditions. Although the ALJ mentioned Dr. Chauhan by name when addressing and weighing his medical source statement (Tr. 17-18), when addressing his treatment notes the ALJ stated only:

> In July 2017, the examiner noted that the [EKG] shows that the claimant's ejection fraction is 60 to 65 percent.
>
> The progress notes in April 24, 2018, the claimant had complaints of shortness of breath, palpitation and light-headedness. Her ejection fraction was 55-60 percent, which is considered normal. In addition, the mitral valve was normal with only mild regurgitation.

(Tr. 17). As such, the Court is left to wonder whether the ALJ recognized that those were Dr. Chauhan's records, and even if he did, the ALJ failed to address the assessments and opinions expressed therein that support Dr. Chauhan's RFC opinion (*see* Tr. 452-53).

To muddy the waters further, the Court is unable to discern whether the ALJ took into account and evaluated the record as a whole with respect to Plaintiff's heart impairment, which is the primary basis of her disability claim. The ALJ did not mention or address Plaintiff's extensive cardiac history or discuss any of the records from the other cardiologists who examined Plaintiff in 2015 (*see, e.g.,* Tr. 268-77, 318-20, 333-35, 409-10).[9] Nor did the ALJ

---

[8] The Commissioner does not dispute that Dr. Chauhan is a treating physician (*see* Doc. 16 at 26-27).

[9] The ALJ also mischaracterized Plaintiff's testimony regarding her complaints of ongoing heart problems. The ALJ said Plaintiff testified "that since her 2010 pacemaker surgery, she has not had any issues" (Tr. 16). To the contrary, Plaintiff testified that the main reason she cannot work is due to low or no stamina and arrhythmias, both of which result from her heart problems (Tr. 41). The testimony referenced by the ALJ relates to Plaintiff's pacemaker itself—Plaintiff testified that she had to have emergency surgery in 2010 or 2011 to have her pacemaker replaced and *that she has not really had any issues with her pacemaker since then* (Tr. 45-46).

discuss the bulk of the progress records from Dr. Medardo Santos, Plaintiff's primary physician. Dr. Santos is significant because he frequently treated Plaintiff's heart condition in light of Plaintiff's financial/insurance difficulties (*see, e.g.,* Tr. 348, 351, 414, 418, 420, 425) and difficulty finding a cardiologist that treated adult congenital heart defects (Tr. 416). Additionally, Dr. Santos treated Plaintiff on approximately seventeen occasions from January 2015 to March 2018 (Tr. 344-51, 412-39). The ALJ, however, addressed only two of his progress notes (*see, e.g.,* Tr. 16-17) (referencing a follow-up visit with an examiner in August 2015 and a progress record from January 2016).[10] While the ALJ was not required to address every piece of evidence in his decision, *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005), on this record the Court cannot conclude that the ALJ evaluated the record as a whole with regard to Plaintiff's heart impairment, *see McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) (providing that it is improper for an ALJ to focus on one aspect of the evidence while disregarding or ignoring other contrary evidence because the ALJ's review of the record must take into account and evaluate the record as a whole).[11] Remand on this basis is required. *See*

---

[10] Dr. Santos repeatedly assessed valvular heart disease, shortness of breath, chest pain, a heart murmur, and fatigue and weakness associated with valvular heart disease (*see* Tr. 346, 348, 351, 414, 416, 418, 420, 422, 425-26, 428-29, 432, 435, 436).

[11] Aside from Dr. Chauhan's records, the ALJ addressed the following in relation to Plaintiff's cardiac impairment: (1) emergency room records dated June 10, 2015, that noted normal heart rate and rhythm and improvement with medication (Tr. 381-407); (2) two progress notes from Dr. Santos, one dated August 17, 2015, that noted Plaintiff had no heart issues but wanted to be monitored by a cardiologist (Tr. 348), and one dated January 18, 2016, that noted Plaintiff had heart complaints but no murmurs, rubs, or gallops and no specialized treatment was required (Tr. 416); (3) a consultative examination report dated April 7, 2016, from Dr. Anand Rao (Tr. 357-59); and (4) an August 2016 RFC assessment from Dr. John Bell, a non-examining doctor (Tr. 80-82). The ALJ's discussion of the emergency room records and Dr. Santos' progress notes are somewhat misleading. The ER records reflect that Plaintiff was treated for anxiety, depression, and vomiting, not for cardiac reasons (Tr. 392, 395-98). Also, while a regular heart rate and rhythm were noted, atrial fibrillation was also noted (Tr. 382, 96). As for Dr. Santos, his August 2015 progress note reflects that Plaintiff was seen for sore eyes, hypothyroidism, and eczema, not cardiac-related concerns (Tr. 347), and his comment on Plaintiff's heart condition was taken somewhat out of context (*see* Tr. 348). And, contrary to the ALJ's assertion, Dr. Santos' January 2016 progress note documented a "loud systolic and diastolic murmur" over the mitral area and Plaintiff was

*id*. (providing that reversal is required when an ALJ focuses on evidence in support of decision and ignores other evidence because the court cannot determine whether the decision is supported by substantial evidence); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir.1985) (recognizing that ALJ's failure to mention or consider contrary medical records, let alone articulate reasons for disregarding them, constitutes reversible error).

The Court also finds that the ALJ failed to state good cause to reject Dr. Chauhan's opinion. When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor.[12] *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987). Typically, the ALJ must afford a treating physician's opinion substantial or considerable weight unless "good cause" is shown to the contrary. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). Good cause exists when (1) the treating physician's opinion was not bolstered by the evidence, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Id.* (citing *Winschel*, 631 F.3d at 1179; *Phillips*, 357 F.3d at 1240-41). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician. *Id.* (citing *Winschel*, 631 F.3d at 1179). The ALJ's failure to do so constitutes reversible error. *Id.* (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

---

referred to a cardiologist (Tr. 416). The reports of Drs. Rao and Bell are addressed at the end of the decision.

[12] Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, and prognosis; what the claimant can still do despite impairments; and the claimant's physical or mental restrictions. 20 C.F.R. § 416.927(a)(1).

The ALJ's two reasons for rejecting Dr. Chauhan's opinion do not constitute good cause. The ALJ's first reason—that it was not fully supported by the evidence of record—is insufficient. The ALJ did not explain how Dr. Chauhan's assessment was not supported by the evidence of record, fully or otherwise; nor did the ALJ clearly articulate what evidence led him to that conclusion. The ALJ's failure to do so constitutes error. *See Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1263 (11th Cir. 2019) (finding ALJ's statement that the treating doctors' questionnaires were "inconsistent with other substantial evidence of record" insufficient where "the ALJ failed to clearly articulate what evidence led him to this conclusion") (citations omitted); *Hubbell-Canamucio v. Comm'r of Soc. Sec.*, No: 2:15-cv-21-FtM-DNF, 2016 WL 944262, at *4 (M.D. Fla. Mar. 14, 2016) (finding conclusory statements that an opinion is inconsistent or not supported by the record are insufficient to show good cause for rejecting a treating doctor's opinion unless the ALJ articulates factual support) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)); *Corron v. Comm'r of Soc. Sec.*, 2014 WL 235472, at *6-7 (M.D. Fla. Jan. 22, 2014) (rejecting ALJ's assertion that treating doctor's opinion was "not supported by objective medical findings and [was] inconsistent with the evidence of record when considered in its entirety" because ALJ failed to articulate evidence supporting that reason); *Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

The ALJ's second reason—Plaintiff's ability to care for her personal needs, care for her cat, cook, clean, and drive—is similarly insufficient. The ALJ does not explain—and it is not apparent to the Court—how those activities are inconsistent with the cardiac-related functional limitations Dr. Chauhan assessed. Moreover, Plaintiff explained that she does chores, cares for her cat, and runs errands only if she feels able to, and that it takes her longer to perform personal

care because she gets winded and dizzy (Tr. 48-49, 202-06). Plaintiff did not state that she performed those activities every day or on a full-time basis, and the ability to perform transitory or sporadic daily activities does not equate to the ability to work on a regular and continuous basis, eight hours a day, five days per week. *See* 20 C.F.R. § 416.972(c) (recognizing that performing self-care, household tasks, and hobbies generally are not indicative of the ability to work on a regular and continuing basis); *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (concluding that the plaintiff's "participation in everyday activities of short duration, such as housework or fishing," were not inconsistent with treating doctors' opinions limiting the plaintiff to less than sedentary work due to his heart condition).

The Commissioner's contention that the ALJ appropriately rejected Dr. Chauhan's opinion on the basis of the two medical opinions that the ALJ credited (Doc. 16 at 27) is not persuasive. The ALJ gave great weight to the opinions of Dr. Anand Rao, a general medical consultant who examined Plaintiff on request of the SSA, and Dr. John Bell, a non-examining state agency consultant (Tr. 17-18). Dr. Rao opined that Plaintiff could perform sedentary work (Tr. 359), and Dr. Bell opined that Plaintiff could perform a limited range of sedentary work (Tr. 80-82).[13] However, because the Court is unable to find that the ALJ evaluated the record as a whole with regard to Plaintiff's heart impairment as addressed above, the Court cannot determine whether either of those opinions provides substantial evidence to support the ALJ's rejection of Dr. Chauhan's opinion. The Court also notes that neither Dr. Rao nor Dr. Bell, who rendered opinions in 2016, had the benefit of reviewing Dr. Chauhan's records or opinion evidence, and neither is a specialist in cardiology (Dr. Rao is an internist and Dr. Bell is an ophthalmologist).[14]

---

[13] The ALJ incorrectly found that Dr. Bell limited Plaintiff to light exertional work (Tr. 18).

### IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is reversed, and the matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further administrative proceedings to apply the proper legal standards consistent with the above findings.

2. The Clerk is directed to enter final judgment in favor of the Plaintiff and close the case.

DONE AND ORDERED in Tampa, Florida, on this 15th day of September 2020.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

---

[14] It is worth noting that the Commissioner does not vigorously defend the ALJ's rejection of Dr. Chauhan's opinion or assert that the ALJ stated good cause in doing so.